UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KRISTOPHER KANABLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-00412-JPH-DML |
| | ) | |
| COBLE, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Kristopher Kanable brought this lawsuit pursuant to 42 U.S.C. § 1983 alleging claims of excessive force and deliberate indifference to his serious medical needs. Defendants have moved for summary judgment arguing that Mr. Kanable failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA") before he filed this lawsuit. For the following reasons, the defendants' motion for summary judgment, dkt. [79], is **DENIED**.

**I.
LEGAL STANDARD**

A motion for summary judgment asks the Court to find that there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018).

## II.
## BACKGROUND

### A.  Offender Grievance Process

The Indiana Department of Correction ("IDOC") has a multi-step grievance process available to inmates as Pendleton. Dkt. 81-1 at 2. Inmates may use the grievance process to raise issues about the conditions of their confinement, including the availability of medical or mental health treatment. *Id*. at 1-2.

During the period relevant to Mr. Kanable's complaint, the grievance process required an attempt at informal resolution followed by three formal steps: (1) submitting a formal grievance to the Grievance Specialist; (2) submitting a written appeal to the Warden or the Warden's designee; and (3) submitting a written appeal to the IDOC Grievance Manager. *Id.* at 2. Successful exhaustion of the grievance procedure requires the prisoner to pursue all steps of the process. *Id*.

A prisoner who wishes to submit a grievance must submit a completed Offender Grievance form to the Offender Grievance Specialist no later than ten business days from the date of the incident giving rise to the complaint or concern. Dkt. 81-5 at 9. The Offender Grievance Specialist must either return an unacceptable form or provide a receipt for an accepted form within five business days. *Id*. If a prisoner does not receive either a receipt or a rejected form within five business days, the prisoner shall notify the Offender Grievance Specialist of that fact and the Offender Grievance Specialist shall investigate the matter and respond to the prisoner's notification within ten business days. *Id.*

The Offender Grievance Specialist has fifteen business days from the date that the grievance is recorded to complete an investigation and provide a response to the prisoner, unless the time has been extended. *Id*. at 10. If the prisoner receives no grievance response within twenty business days of the Offender Grievance Specialist's receipt of the grievance, the prisoner may appeal as though the grievance had been denied. *Id*. at 11.

To appeal a grievance response (or lack thereof) to the Warden or his designee, the prisoner shall submit a Grievance Appeal form within five business days after the date of the grievance response. *Id.* at 12. The appeal response shall be completed within five business days of receipt of the appeal. *Id.*

If the prisoner wishes to appeal the appeal response, the prisoner shall check "Disagree" on the appeal response and submit the completed Grievance Appeal form and any additional documentation to the Prisoner Grievance Manager within five business days of the appeal response. *Id.* at 12-13. The Offender Grievance Manager has ten business days to complete the investigation and submit a response to the appeal unless additional time is required to fully investigate the grievance. *Id*. at 13. The Offender Grievance Manager's decision regarding the grievance is final. *Id*. Once the prisoner receives the Offender Grievance Manager's appeal response, he or she has exhausted all remedies at the IDOC level. *Id*.

### B. Mr. Kanable's Attempts to Participate in the Grievance Process

On August 15, 2018, Mr. Kanable filed two informal grievances alleging that Sgt. Wion and Ofc. Coble had used excessive force against him that day. Dkt. 96-1 at 2. On August 28, 2018, Mr. Kanable filed a formal grievance again alleging that he was assaulted by Ofc. Coble and Sgt. Wion on August 15, 2018 and that he was subsequently denied medical assistance by Sgt. Shaw, Officer Spiker, and other unnamed prison officials. *See* dkt 81-3 at 1; dkt. 96-1 at 4, 6. The

Offender Grievance Specialist returned the formal grievance as untimely because Mr. Kanable submitted the form more than ten days following the incident and did not show good reason for the delay. Dkt. 81-4 at 1.

The defendants have moved for summary judgment, arguing that Mr. Kanable failed to exhaust the claims proceeding in this case. The parties dispute whether the grievance process was available to Mr. Kanable. Specifically, the parties dispute: whether Mr. Kanable timely submitted grievance forms to prison officials at Pendleton; whether Mr. Kanable lacked access to the grievance process in August 2018, specifically the opportunity to timely resubmit his returned formal grievances on the proper form; and whether Mr. Kanable's resubmitted September formal grievances were timely and proper. *Compare* dkt. 95 at 1-3 (Declaration of Kristopher Kanable) *to* dkt. 81-1 (Affidavit of Christina Conyers) and 81-2 (Grievance History).

## III.
## DISCUSSION

The defendants seek summary judgment arguing that Mr. Kanable failed to exhaust his available administrative remedies as required by the PLRA. The PLRA requires that a prisoner exhaust his available administrative remedies before bringing suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006) ("'To exhaust remedies, a prisoner must file complaints and appeals in the

4

place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)). Thus, "to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Thompson*, 362 F.3d 395, 397 (7th Cir. 2004). It is the defendants' burden to establish that the administrative process was available. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it.").

While a prisoner "must exhaust available remedies," he "need not exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). An administrative procedure is unavailable when 1) the process operates as a "simple dead end," 2) when it is so opaque that it is incapable of use, and 3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60.

Where the administrative policy is silent, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Strong v. David,* 297 F.3d 646, 650 (7th Cir. 2002); *see also Riccardo v. Rausch*, 375 F.3d 521, 523 (7th Cir. 2004); *Wilder v. Sutton*, 310 Fed. Appx. 10, 15, 2009 WL 330531, *4 (7th Cir. 2009) ("prisoners must only put responsible persons on notice about the conditions about which they are complaining"). An offender "need not lay out the facts, articulate legal theories, or demand particular relief" so long as the grievance objects "intelligibly to some asserted shortcoming." *Strong,* 297 F.3d at 650.

A. **Medical Defendants**

Nurse Moore-Groves concedes in her reply that there is a dispute of fact as to whether Mr. Kanable exhausted his administrative remedies with respect to her, and she has withdrawn her exhaustion defense. *See* dkt. 101 at 2; dkt. 96-1 at 9-10 (formal grievance form regarding an

encounter with Nurse Moore-Groves).  The motion for summary judgment is therefore **DENIED** as to Nurse Moore-Groves.

Dr. Talbot and Nurse McAbee argue that they are entitled to summary judgment because they were not mentioned in the grievance about Nurse Moore-Groves.  Dkt. 101 at 3.  But they have cited no legal authority in support, even though they bear the burden of proving that Mr. Kanable failed to exhaust his claims.  *Id.*; *see* dkt. 80 at 5–6; *Kaba v. Stepp*, 458 F.3d 678, 680-81 (7th Cir. 2006).

Mr. Kanable's grievance mentioning Nurse Moore-Groves said that Mr. Kanable "was refused stitches & other medical treatments" despite "multiple times back & forth from the cell house & medical."  Dkt. 96-1 at 10.  The grievance does not say that Nurse Moore-Groves was the only medical employee to fail to provide treatment.  *Id.*  And while it didn't name Dr. Talbot or Nurse McAbee, that was at most "a mere technical defect that had no effect on the process and didn't limit the usefulness of the exhaustion requirement."  *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).  Mr. Kanable's grievance identified enough complaints about "medical" to allow him to pursue claims against Dr. Talbot and Nurse McAbee, as well as against Nurse Moore-Groves. *See id.* ("[T]he primary purpose of a grievance is to alert prison officials to a problem, *not to provide personal notice to a particular official that he may be sued*; the grievance is not a summons and complaint that initiates adversarial litigation." (emphasis added)).

Dr. Talbot and Nurse McAbee have not argued any other insufficiencies in Mr. Kanable's attempts to grieve his complaints and have admitted that the attempts were sufficient as to Nurse Moore-Groves. *See* dkt. 101 at 1–3. Their motion for summary judgment is therefore **DENIED**.

Further, because Dr. Talbot and Nurse McAbee have not shown that Mr. Kanable's grievance attempts were insufficient, the Court provides notice under Federal Rule of Civil

6

Procedure 56(f) of its intent to grant summary judgment on exhaustion to Mr. Kanable for his claims against them.

### B. State Defendants

Officer Coble has conceded that there is a dispute of fact as to whether Mr. Kanable exhausted his administrative remedies with respect to him, and he has withdrawn his exhaustion defense. Dkt. 107. The motion for summary judgment is therefore **DENIED** as to Officer Coble.

The remaining state defendants who have appeared by counsel—Dushan Zatecky, Michael Breen, Alexander Shaw, Jennifer Schurman, and Ethan Spiker—argue that they are entitled to summary judgment because Mr. Kanable did not try to exhaust the grievance process as to the claims against them. Dkt. 106 at 2–3.

They have designated evidence that Mr. Kanable "never filed an accepted formal grievance at the Pendleton Correctional Facility" because the one he attempted to file was untimely since it was not received until September 21, 2018, even though it was dated August 28, 2018. Dkt. 81-1 at 3 (Conyers Decl.). Mr. Kanable has responded with a declaration that he gave Lt. Shaver the formal grievance "[o]n 8-28-2018" and confirmed that in a September 5, 2018 letter to Defendant Schurman. Dkt. 95 at 2. Mr. Kanable has provided a copy of the September 5, 2018 letter, which says: "On August 28, 2018 I turned in a formal grievance and a copy of my unresponded informal grievance. On the night of 8-28-2018 I handed my copes to Lt. Shaver." Dkt. 96-1 at 5.

There is therefore a disputed issue of fact about whether Mr. Kanable submitted his formal grievance on August 28, 2018, which would be timely, or near September 21, 2018, which would not be.

The state defendants also argue, for the first time in their reply brief, that Mr. Kanable "has presented no evidence" of an "initial attempt" to grieve his complaints against them before

7

attempting to file a formal grievance. Dkt. 106 at 3. This argument is forfeited because the state defendants did not raise it in their initial brief. Dkt. 84; *see* dkt. 80; *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he district court [is] entitled to find that an argument raised for the first time in a reply brief is forfeited."). The state defendants cannot fault Mr. Kanable for failing to designate evidence to preempt an argument that they had not yet made, especially on exhaustion—an affirmative defense on which they bear the burden. *See Santaigo v. Anderson*, 496 Fed. App'x 630, 638 (7th Cir. 2012) ("Because the defendants bear the burden of proving nonexhaustion, they must do more than point to a lack of evidence in the record; rather, they must establish affirmatively that the evidence is so one-sided that no reasonable fact finder could find that the plaintiff was prevented from exhausting his administrative remedies."); *Branham v. Snow*, 392 F.2d 896, 906–07 (7th Cir. 2004).

### C. Officer Wion

Officer Wion, who is proceeding *pro se*, joined the initial motion for summary judgment, dkt. 85; dkt. 86, but has not filed a separate brief or a reply brief. For the same reasons as for the state defendants, there is a triable issue of fact on exhaustion as to Officer Wion.

## IV.
## CONCLUSION

For the reasons explained above, the defendants' motion for summary judgment is **DENIED**. Dkt. [79].

Nurse Moore-Groves and Officer Coble have withdrawn their exhaustion defenses. Dkt. 101; dkt. 107,

Dr. Talbot and Nurse McAbee shall have fourteen days from the date of this order to respond to the Court's Rule 56(f) proposal. If Defendants respond, Mr. Kanable shall have fourteen days from the filing of that response in which to reply.

The remaining defendants' dispute regarding the availability of the grievance process cannot be resolved on summary judgment; it must instead be withdrawn or resolved at a *Pavey* hearing. Defendants Zatecky, Breen, Shaw, Schurman, Spiker, and Wion shall have **through April 21, 2022**, to notify the Court whether they wish to withdraw the affirmative defense or proceed to a *Pavey* hearing. The failure to respond by that deadline will be interpreted by the Court as a withdrawal of the exhaustion defense.

**SO ORDERED.**

Date: 3/31/2022

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

KRISTOPHER KANABLE
150495
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

NATHANIEL WION
Address Filed for Court Use Only (Dkt. 48)
Electronic Service Participant – Court Only